**In re Rolf LARSEN, Former Justice of the Supreme Court.**

**No. 4 JD 94.**

Court of Judicial Discipline of Pennsylvania.

Aug. 4, 1998.

Before MAGARO, MESSA, SYLVESTER, SWEENEY, PANELLA and BYER, JJ.

## OPINION OF THE COURT

PANELLA, Judge.

Before the Court is the Amended Omnibus Pretrial Motion of the Respondent, former Supreme Court Justice Rolf Larsen. An en banc argument was held on May 27, 1998.

## I. PROCEDURAL HISTORY

This case has a complicated and beleaguered history. Proceedings against the Respondent were instituted by the Judicial Conduct Board on March 10, 1994, when the Board filed an Application with this Court which requested that we suspend the Respondent with pay.[1] The Application, which was docketed to Number 3 JD 94, was primarily based on the filing of a criminal information, which included 27 felony counts, against Respondent.[2] A hearing was initially held on March 24, 1994, after which we denied the Application without opinion.

On April 9, 1994, the Respondent was found guilty, in the Court of Common Pleas of Allegheny County, at No. CC9313844, of two counts of Criminal Conspiracy, 18 Pa.

Cons.Stat. § 903; he was acquitted of 12 counts under Section 13 of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.Stat. § 780–113(a)(12). The Board then filed a second Application, on April 18, 1994, which requested suspension without pay based on the information and jury verdict. A hearing was held on May 25, 1994. On June 3, 1994, we granted the petition and the Respondent was suspended without pay effective immediately. *In re Justice Rolf Larsen*, 655 A.2d 239 (Pa.Ct.Jud.Disc.1994).

Following Larsen's conviction, the Board filed a Complaint with this Court on June 5, 1994, docketed to Number 4 JD 94. The Complaint consists of 27 Counts divided into six separate parts. Part A requests disciplinary action because of the aforesaid felony convictions (Counts 1–5); Part B alleges the underlying facts which support the convictions, i.e., that Respondent conspired with others to unlawfully obtain a Schedule IV controlled substance (Counts 6–9); Part C contains charges that Larsen made knowingly false material statements before a Grand Jury (Counts 10–14); Part D requests disciplinary action because the Respondent filed with the Pennsylvania Supreme Court documents containing averments which were knowingly false or made with reckless disregard for the truth (Counts 15–18); Part E charges the Respondent with failing to recuse in matters involving potential claims of bias and partiality because of his prior relationship, both personal and professional, with an attorney (Counts 19–23); and Part F alleges that Larsen had ex-parte conversations with an attorney regarding two petitions for allowance of appeal pending before the Supreme Court (Counts 24–27).

On May 24, 1994, the Pennsylvania House of Representatives adopted seven articles of impeachment against Larsen, accusing him of "misbehavior in office" pursuant to Article 6, § 4 of the Pennsylvania Constitution. The articles of impeachment were exhibited to

---

1. The Application was filed under the general authority granted in Article V, § 18(d)(2) of the Pennsylvania Constitution. Since the time of the filing of the Application, this Court has adopted rules which address the procedure whenever the Board seeks relief other than by the filing of a formal complaint pursuant to Article V,

§ 18(b)(5) of the Pennsylvania Constitution. *See,* Chapter 7, Court of Judicial Discipline Rules of Procedure.

2. Prior to trial, 11 counts were dismissed.

the Senate on June 6, 1994, and were incorporated in the Senate's Writ of Impeachment Summons. Larsen sought a preliminary injunction to enjoin the Senate and Senate impeachment trial committee from conducting the impeachment trial. The application was denied by the Commonwealth Court of Pennsylvania, *Larsen v. Senate of Pennsylvania, et al.*, 166 Pa.Commw. 472, 646 A.2d 694 (1994).

On June 13, 1994, the Respondent was sentenced by the Honorable W. Terrence O'Brien to one year probation for each of the two counts of Criminal Conspiracy. In addition, Judge O'Brien, upon finding that Larsen had committed an "infamous crime" under Article 2, § 7 of the Pennsylvania Constitution[3], entered an Order removing the Respondent from office.[4]

The sentence was vacated and remanded by the Superior Court on August 5, 1996, *Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996), *alloc. denied*, 547 Pa. 752, 692 A.2d 564 (1997), which held the Respondent "should have been sentenced on only a single charge of criminal conspiracy." 452 Pa.Super. at 537, 682 A.2d at 798. On May 27, 1997, Judge O'Brien resentenced the Respondent to similar conditions including the removal from office.

On July 5, 1994, the Respondent filed an Omnibus Pretrial Motion in this case, requesting that the Complaint be dismissed for several reasons. In Section I, the Respondent argued that this Court lacked jurisdiction because he was no longer a judicial officer by way of Judge O'Brien's removal Order of June 13, 1994 in the criminal case. In Section II, Larsen contended that he was exposed to "triple jeopardy" because of the concurrent criminal case, pending Senate impeachment trial, and judicial disciplinary proceeding; therefore, Larsen requested the Complaint be "dismissed on triple jeopardy grounds." Section III challenged the sufficiency of the violations brought by the Board, Section IV was for discovery, and Section V included a request for defense attorney fees. Section VI requested recusal of any Court members who were closely affiliated with any witnesses intended to be called by the Board.

By way of an Order issued on July 25, 1994, per the Honorable Joseph F. McCloskey, Conference Judge, we denied Section III of the motion; denied Section IV without prejudice to file specific discovery requests; denied Section V; and denied Section VI, without prejudice because it was premature. The Court ordered the parties to file briefs with respect to Sections I and II.

On October 4, 1994, following an impeachment trial before the Senate, the Respondent was found guilty of Article II of the Articles of Impeachment. As a result, the Senate adopted Senate Resolution No. 163, which again removed the Respondent from office and declared him ineligible to hold public office in the future. The Resolution, in pertinent part, states:

> Adjudging Respondent Rolf Larsen removed from office and disqualified from holding any public office.
>
> WHEREAS, the Senate of the Commonwealth of Pennsylvania having tried Rolf Larsen, Justice of the Supreme Court of Pennsylvania upon seven Articles of Impeachment exhibited against him by the House of Representatives, and two-thirds of the Senators present having found him guilty of the charges contained in Article II: It is therefore,

### ORDERED

> And now, THIS 4TH DAY OF October, 1994, the Senate of Pennsylvania does hereby order and decree and it is hereby adjudged that the Respondent Rolf Larsen, Justice of the Supreme Court of Pennsylvania be, and he is hereby, removed from office; and that he be and is hereby forever disqualified to hold any office of trust or profit under this Commonwealth of Pennsylvania; and be it further

---

3. Article 2, § 7 states that no person "convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth."

4. Of course, by Order of the Supreme Court dated October 28, 1993, Justice Larsen had been earlier relieved of all judicial duties.

RESOLVED, That the President and Secretary be directed to communicate to the Governor of this Commonwealth, the Chief Justice of the Supreme Court, the Treasurer of the Commonwealth, the House of Representatives, Respondent Rolf Larsen and the Secretary of the Commonwealth the foregoing order and judgment of the Senate and transmit a certified copy of the same to each.

The Respondent filed an Amended Omnibus Pretrial Motion in this case on November 10, 1994. A reply was filed by the Board on November 23, 1994. Briefs were filed by the Respondent and the Board on November 30, 1994 and December 12, 1994, respectively. In accordance with an Order issued on December 16, 1994, per Judge McCloskey, the Court scheduled argument on the following issues:

1) Respondent's Motion to Dismiss for lack of subject matter jurisdiction and former jeopardy;

2) Respondent's Motion to Limit this Court's jurisdiction to affect the Respondent's license to practice law in this Commonwealth; and

3) Respondent's assertion that this case is moot.

The Court did not address the amended motion because the parties presented a joint motion for continuance on January 25, 1995. Based upon the joint motion, this Court, with Burns, Donohue and Johnson dissenting, continued all matters pending disposition of the direct appeal in the criminal case which was pending before the Superior Court. Additionally, the Court ordered that the continuance was to be automatically vacated in the event that Larsen filed notice with the Administrative Office of Pennsylvania Courts to reinstate the active status of his law license. The Court's interim Order of suspension without pay was continued.

In September 1995, Larsen filed a Complaint, at No. 95–CV–01540 in the United States District Court for the Middle District of Pennsylvania, against the Senate, as well as the Supreme Court and this Court, among others, requesting, inter alia, that his impeachment be set aside and all disciplinary action be stayed. The case is currently in the Third Circuit Court of Appeals, at Nos. 97–7153, 97–7296 and 97–7451, on review of orders of the District Court granting and denying numerous motions to dismiss.

On March 25, 1998, the Board filed a motion to dispose of the amended omnibus pretrial motion. Basically, the Board contended that the original reason for the general continuance, i.e., awaiting disposition of the pending appeal of Larsen's criminal conviction, no longer existed in light of the exhaustion of direct appeals. Larsen's answer to the motion was filed on April 13, 1998. In the answer, Larsen denied that the criminal conviction is final, "(t)o the contrary, Respondent is preparing and intends to file before July 1998 a petition under the Pennsylvania Post–Conviction Relief Act in the Court of Common Pleas, Allegheny County, Pennsylvania." Thus, Larsen argued that the lack of finality of the underlying criminal conviction continues to exist in light of the "soon-to-be filed PCRA petition." Respondent's Answer, paras. 2 & 3. On April 22, 1998, we ordered that the stay entered on June 24, 1994 was vacated, and the parties were granted an opportunity to supplement their briefs in relation to the Amended Omnibus Pretrial Motion. Argument was heard before the Court en banc on May 27, 1998.

On June 11, 1998, the Board filed a motion to withdraw, without prejudice, parts B through F of the Complaint. Although the Board requested that the judicial disciplinary proceeding continue with respect to part A of the Board's Complaint, the Board concluded that this case be limited in scope because "the removal Order entered by Judge O'Brien, the verdict in the impeachment trial, and Senate Resolution No. 163, are in full force and effect." Disposition of this motion is still pending.

## II. DISCUSSION

In his Amended Omnibus Pretrial Motion Respondent contends that the Complaint of the Judicial Conduct Board should be dismissed for three reasons:

1. This Court lacks subject matter jurisdiction since Respondent is no longer a judicial officer having been removed

from his judicial office (a) by the sentence imposed in the Court of Common Pleas of Allegheny County, and (b) by the Senate which impeached him .[5]

2. This Court lacks authority to enter an order affecting Respondent's practice of law, the jurisdiction over which resides with the Disciplinary Board of the Supreme Court.

3. The question of Respondent's removal and ineligibility to hold public office in the future is moot.[6]

### Subject Matter Jurisdiction

■ This Court clearly has subject matter jurisdiction.[7] Our ruling is based on the decisions of the Supreme Court of Pennsylvania in *Judicial Inquiry and Review Board v. Snyder*, 514 Pa. 142, 523 A.2d 294 (1987) and *Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988). In *Snyder*, the Supreme Court recognized that the "responsibility for maintaining the integrity of judicial administration so as to uphold public respect for the rule of law" required continuing jurisdiction over disciplinary matters although the jurist in question had left office. *Id.* at 151, 523 A.2d at 298–99. In *In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud.Disc.1997), we stated:

It has been contended in other cases, that the jurisdiction of the Supreme Court to discipline a judge ends when the judge's judicial service ends. *See, Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988); *Judicial Inquiry and Review Board v. Snyder*, 514 Pa. 142, 523 A.2d 294 (1987). The Supreme Court rejected this argument in both cases for the reason that "once instituted, our jurisdiction over disciplinary proceedings is thus only at an end

when we issue a final order". *Snyder*, 523 A.2d at 299.

697 A.2d at 301, n. 1. *See also, In re Chesna*, 659 A.2d 1091 (Pa.Ct.Jud.Disc.1995) (resignation of judge before institution of disciplinary proceedings would not deprive court of jurisdiction).

### Disbarment

■ Turning to the second issue,[8] we conclude that the Court of Judicial Discipline has exclusive jurisdiction to consider and deal with Respondent's fitness to practice law because all of the misconduct with which he is charged took place while he held judicial office. Support for this decision is found in *Disciplinary Counsel v. Anonymous Attorneys*, 528 Pa. 83, 595 A.2d 42 (1991). In that case the question presented was couched as follows:

(W)hether the Judicial Inquiry and Review Board (JIRB) has exclusive jurisdiction to discipline Judicial officers for misconduct; so as to preclude action by the Disciplinary Board against those same Judicial officers who are also attorneys registered to practice law in the Commonwealth of Pennsylvania.

*Id* at 85–86, 595 A.2d at 43 (footnotes omitted). The Supreme Court held that exclusive jurisdiction vested with JIRB to handle disciplinary proceedings regarding a judicial officer, and it was for JIRB to determine whether sanctions of (1) removal or suspension from judicial office or (2) limitations against the judicial officer's right to practice law, should be imposed. *Id.* at 98, 595 A.2d at 49.

The 1993 Amendment to the Pennsylvania Constitution changed the existing system of

---

5. We note that Respondent is no longer a judicial officer for the additional reason that his term has expired. This alters neither our approach nor our decision in this matter.

6. Respondent initially contended that the proceedings in this Court constituted double ("triple") jeopardy but he has abandoned that position. At the time of oral argument, Larsen's then counsel restricted his comments to the issues of jurisdiction and available sanctions. *See* Transcript, Oral Argument, 5–27–98 at 2.

7. A court has jurisdiction of the "subject matter" if it is empowered to "enter upon an inquiry for

the competent hearing and determination of a controversy of such character." *Upholsterers' International Union of North America v. United Furniture Workers*, 356 Pa. 469, 472, 52 A.2d 217, 219 (1947).

8. On July 15, 1994, in its response to Larsen's omnibus pretrial motion, the Board first raised its contention that available discipline included "the question of disbarment of the Respondent from the practice of law." *See*, Judicial Conduct Board's response to omnibus pretrial motion, para. 8.

judicial discipline. Under the framework in place in 1991, JIRB investigated complaints and made recommendations to the Supreme Court. Under the new dual system, the investigation and prosecution responsibilities lie with the Judicial Conduct Board while the adjudication proceedings are before the Court of Judicial Discipline. Although the *Anonymous Attorneys* case was decided under the pre–1993 system, the Supreme Court's analysis is equally applicable to the current system.

In *Anonymous Attorneys,* the Supreme Court found that the sole jurisdiction for the discipline of all Commonwealth Justices, Judges and District Justices rested in the Judicial Inquiry and Review Board and the Supreme Court. *Id.* at 92, 595 A.2d at 46. By virtue of the 1993 Amendment to the Pennsylvania Constitution, the "sole jurisdiction" now resides in this Court, with review by the Supreme Court.[9] Pa. Const., Art. V, § 18(b), (c) and (d). The Supreme Court also looked to the type of conduct which compels judicial discipline proceedings:

> Section 18(d) sets forth six specific types of conduct which would trigger a JIRB proceeding. The very first type of activity prohibited is a "violation of section seventeen of this article." Section 17 of the Constitution, entitled *Prohibited Activities,* expressly provides in subsection (b): "Justices and judges shall not engage in any activity prohibited by law and shall not violate any **canon of legal or judicial ethics** prescribed by the Supreme Court." (emphasis in original)

*Id.* at 93, 595 A.2d at 47. Under the 1993 Amendment to the Constitution the prohibited conduct is set out in Article V, § 18(d)(1) and a "violation of section 17 of this article" continues to hold its place as conduct which can trigger disciplinary proceedings in this Court. Section 17(b) was not amended in 1993, so it continues to proscribe, for justices and judges, conduct which violates "any canon of legal or judicial ethics."

The Supreme Court described the broad authority granted to JIRB under the Constitution:

> This Constitutional scheme empowers only JIRB to bring actions against judicial officers for any allegations of misconduct which arise during that officer's tenure in the judiciary.

*Id.* The Court concluded that the scope of review by JIRB covered not only the conduct of a judge in official capacity, but "all conduct of a judge ...." *Id. See also, Matter of Dalessandro,* 483 Pa. 431, 397 A.2d 743 (1979).

The constitutional scheme was not altered by the 1993 Amendment; what was changed was the identity of the investigative and prosecutorial agency, now the Judicial Conduct Board, and the adjudicatory body, now this Court. The 1993 Amendment accomplished a separation of these functions, all of which formerly resided in JIRB. Thus, we hold that the Judicial Conduct Board, and not the Disciplinary Board, has the constitutional prerogative to bring actions against judicial officers upon allegations of misconduct which arise during that officer's tenure in the judiciary.

We are aware that the 1993 Amendment changed the review to be exercised by the Supreme Court in judicial disciplinary matters; whereas its review of JIRB's determinations [10] formerly was de novo,[11] under the 1993 Amendment to the Constitution the Supreme Court's review of this Court's decisions has been refined and now is as follows: "on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and, as to sanctions, the scope of review is whether the sanctions imposed were lawful." Pa. Const., Art. V, § 18(c)(2). The Supreme Court clarified this review process in *In re Hasay,* 546 Pa. 481, 686 A.2d 809 (1996):

> In an appeal by a judicial officer from an order imposing discipline, the standard of

---

**9.** In the case of a justice, the review is provided by a special tribunal composed of seven judges from the Superior Court and Commonwealth Court. Pa. Const., Art. V, § 18(c)(1).

**10.** JIRB only made "recommendations". Former § 18(g), Article V of the Pa. Constitution, Amended May 18, 1993.

**11.** Former § 18(h), Article V of the Pa. Constitution, amended May 18, 1993.

review for factual questions is the clearly erroneous standard. Pa. Const. Art. V, § 18(c)(2). In an appeal by the board from the dismissal of a complaint, there is no standard of review for factual questions, because issues of fact are beyond our scope of review, which "shall be limited to questions of law." Pa. Const. Art. V, § 18(c)(3).

*Id.* at 485–86, 686 A.2d at 812 (footnote omitted) [12].

The 1993 Amendment does not change our obligation to follow *Anonymous Attorneys*. Although the Supreme Court's review of judicial disciplinary matters was modified, the Supreme Court's decision in *Anonymous Attorneys* is not the product of such a narrow focus. We do not believe that the *sine qua non* of the Supreme Court's opinion in *Anonymous Attorneys* was its de novo review of JIRB's recommendations, rather the opinion is primarily reliant on the broad constitutional scheme for the discipline of judicial officers. The Supreme Court stated that the investigation and prosecution of judicial officers for conduct alleged to have occurred during their tenure as judicial officers was within the exclusive province of JIRB, and not with the Disciplinary Board. As noted, that system has not significantly changed with the replacement of JIRB with JCB. Therefore, we are inclined to follow the directive of our Supreme Court absent forceful justification for a contrary course.

The Supreme Court itself has provided us with an indication that the framework established in *Anonymous Attorneys* survives the 1993 Amendment. In *In re Jules C. Melograne*, No. 0096 M.D.Misc.Dkt.1996 (Pa. filed September 27, 1996), the Supreme Court of Pennsylvania addressed an application filed in that Court by the Judicial Conduct Board requesting, inter alia, that the judicial officer in issue be disbarred.[13] The Board averred that the respondent had violated various Rules of Professional Conduct and requested that the Court "enter an Order disbarring respondent, temporarily suspending his right to practice law, or granting such other relief as may be appropriate." The Board also requested that the Supreme Court declare that respondent had forfeited his judicial office. On September 27, 1996, without explanation, the Supreme Court referred the matter to the Court of Judicial Discipline. We regard this action by the Supreme Court as a reliable statement that the holding of *Anonymous Attorneys* still governs the discipline of judicial officers, that disciplinary action rests within the exclusive jurisdiction of the Judicial Conduct Board and this Court, and that an available sanction specifically includes disbarment from the practice of law.

Lastly, a further indication that disbarment of a judicial officer from the practice of law is properly the function of this Court is found in Article V, § 18(d)(3) which provides:

(3) A justice, judge or justice of the peace convicted of misbehavior in office by a court, disbarred as a member of the bar of the Supreme Court or removed under this section shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.[14]

---

**12.** We note that the Supreme Court has not yet addressed its *standard of review* if this Court were to invoke the sanction of disbarment. In light of the Supreme Court's inherent and exclusive power to supervise the conduct of attorneys under Article V, Section 10(c) of the Constitution, the Supreme Court may choose to conduct a *de novo* review of the record regarding the disbarment issue, or a review under the more restrictive standards pursuant to the 1993 Amendment.

**13.** The judicial officer had been convicted of a felony.

**14.** In his concurring opinion, Judge Byer remarks that "Article V, Section 18(d)(3), by providing that a judicial officer who is 'disbarred as a member of the bar of the Supreme Court' shall be removed by this Court from office seems to anticipate that the disbarment would occur in some other proceeding, before another tribunal." Concurring Opinion, p. 50.

Initially, we observe that the language does not provide that a judicial officer who is disbarred "shall be removed by this Court"; it provides that, in such case, such judicial officer shall "forfeit automatically" his judicial office.

Next, the language does not "seem to anticipate" that *disbarment* would occur "before another tribunal." An analysis of this language readily leads to the opposite conclusion as follows:

1. The raison d'etre § 18(d)(3) is to provide for automatic forfeiture of judicial office upon the occurrence of three events.
2. The three events are stated to be:
   (a) conviction of misbehavior in office by a court,

This language is identical to that of former Article V, § 18(d) of the Constitution, before the 1993 Amendment and which was in effect when the Supreme Court decided *Anonymous Attorneys.* The Supreme Court, in *Anonymous Attorneys* stated:

> Article V, Section 18(d) of the Constitution provides for removal of a judicial officer upon disbarment, thus, impliedly conferring authority to JIRB to recommend such a sanction to this Court when appropriate.

*Anonymous Attorneys, supra* at 97, n. 14, 595 A.2d at 48, n. 14. By lifting the language of former Section 18(d) in toto and placing it unmodified in the 1993 Amendment, the drafters were making disbarment a disciplinary option under Section 18(d)(1) which provides that:

> (1) A justice, judge or justice of the peace may be suspended, removed from office **or otherwise disciplined.** . . . (emphasis added)

For these reasons we hold that the Judicial Conduct Board has exclusive authority to seek disciplinary action, including disbarment from the practice of law, against judicial officers for misconduct occurring during their judicial service and that discipline can only be imposed by this Court subject to review as provided by the Constitution in Article V, § 18(c).

### Mootness

We must now consider the Respondent's last contention, whether the Board's Complaint should be dismissed as moot inasmuch as Respondent has been removed from office and is ineligible to hold public office. The issue is therefore a question of whether any useful purpose is served by continuing the disciplinary proceedings against the Respondent, recognizing that he has been removed from the bench as a result of both the criminal prosecution and the Senate proceedings, and permanently disqualified from holding public office by way of Senate Resolution No. 13, as well as his conviction of an "infamous crime." [15]

Initially, we note that any mootness argument is applicable to the imposition of sanctions only. The question of whether the conduct charged by the Board subjects the Respondent to discipline under the Pennsylvania Constitution, Article V, § 18(d)(1)(2) or (3) is not moot.[16]

The 1993 Amendment to the Pennsylvania Constitution, Article V, § 18, specified certain conduct of judicial officers which would subject them to discipline, and created the Judicial Conduct Board and the Court of Judicial Discipline to implement its provisions.

> A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for conviction of a felony; violation of section 17 of this article; misconduct in office; neglect or failure to perform the duties of office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court.

Pa. Const. Art. V, § 18(d)(1).

The judicial disciplinary system is *sui generis* and operates entirely indepen-

---

(b) disbarment, or
(c) removal under this section.

3. Event (a) is the only one where the acting tribunal is designated, i.e., "a court" and the clear implication is that it is a court other than the Court of Judicial Discipline.

4. The language of the section specifies no court when referring to events (b) and (c), but the Court of Judicial Discipline is the only court with authority to order removals "under this section" and since events (b) and (c) are described in conjunctive phrases, the logical conclusion is that the same court, *viz.*, the Court of Judicial Discipline, was contemplated as imposing the discipline described in both (b) ("disbarred as a member of the bar of the Supreme Court") and (c) ("removed under this section").

**15.** *See* footnote 3, *supra.*

**16.** In the adjudication phase, the Court of Judicial Discipline must file findings of fact and conclusions of law in accordance with C.J.D.R.P. No. 503(A). If the Court addresses sanctions, a public hearing is scheduled, followed by a written decision supporting the sanction imposed. C.J.D.R.P. No. 504(A) & (B). The sanction decision constitutes a final order of discipline pursuant to Article V, § 18 of the Pennsylvania Constitution.

dent of the criminal justice system or the legislative impeachment process. Disciplinary cases are civil proceedings, though "the severe sanctions which may be imposed have led to the observation that ... [they] are 'quasi-criminal in nature.'" *In re Hasay, supra* at 492, 686 A.2d at 815 (1996). This is not to say, however, that the full panoply of constitutional rights are granted to a respondent in a disciplinary action. *In re Dandridge,* 462 Pa. 67, 74, n. 4, 337 A.2d 885, 888, n. 4 (1975).

A meaningful approach to the determination of the character of these proceedings is that taken by the Pennsylvania Supreme Court in *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975) and *In re Berlant,* 458 Pa. 439, 328 A.2d 471 (1974). In *Campbell,* the Court adopted the reasoning of the Seventh Circuit Court of Appeals in *In re Echeles,* 430 F.2d 347, 349–50 (7th Cir.1970), and quoted from the Circuit Court's opinion:

> (D)isbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, ... they are not for the purpose of punishment, but rather ... to protect the courts and the public from the official ministration of persons unfit to practice.

463 Pa. at 478–79, 345 A.2d at 619–20. In *Berlant,* the Supreme Court similarly observed:

> Disciplinary proceedings are not criminal in nature; hence, the reasonable doubt standard need not apply. Moreover, the sanctions arising from such proceedings—censure, suspension, or disbarment—are not primarily designed for their punitive effects, but for their positive effect of protecting the public and the integrity of the courts ....

458 Pa. at 441, 328 A.2d at 473. *Campbell* and *Berlant* highlight what is obvious: that it is necessary to have more than one system dealing with the same type of conduct, one to

punish the offender, and the other to remedy the injury to the integrity of the judicial system caused by the conduct. These observations by our Supreme Court apply with equal, if not heightened, poignancy to judicial disciplinary proceedings.

The responsibility of the Judicial Conduct Board is constitutionally mandated:

> The board shall receive and investigate complaints regarding judicial conduct filed by individuals or initiated by the board; issue subpoenas to compel testimony under oath of witnesses, including the subject of the investigation, and to compel the production of documents, books, accounts and other records relevant to the investigation; determine whether there is probable cause to file formal charges against a justice, judge or justice of the peace for conduct proscribed by this section; and present the case in support of the charges before the Court of Judicial Discipline.

Pa. Const. Art. V, § 18(a)(7). *See also,* 42 Pa.Cons.Stat.Ann. § 2105.

Thus, the Judicial Conduct Board has a constitutional obligation, without exception, to seek discipline if, in its judgment, the conduct is constitutionally proscribed. Upon the filing of formal charges, the Court of Judicial Discipline must "determine whether a sanction should be imposed...." Pa. Const. Art. V, § 18(b)(5). A prior criminal prosecution does not bar a later disciplinary action sought by the Board,[17] nor does an impeachment proceeding usurp jurisdiction of the Board or this Court.[18] Therefore, we hold that these proceedings are not moot, even though Respondent was the subject of a prior criminal prosecution and impeachment proceeding.

Moreover, if the sanctions available to this Court were limited to removal and prohibition from office, the question of whether we should, in the sanction phase, consider these penalties would necessitate close scrutiny of

---

**17.** Indeed, conviction of a felony is one of the enumerated occasions for the imposition of discipline by the Court of Judicial Discipline, thus demonstrating that the constitutional authority granted this Court subsumes prior proceedings in criminal court. *See* Pa. Const. Art. V, § 18(d)(1).

**18.** Article V, § 18 concludes as follows: "This section is in addition to and not in substitution for impeachment for misbehavior in office contained in Article VI."

the mootness doctrine. *See, e.g., Judicial Inquiry and Review Board v. Snyder, supra* at 151, 523 A.2d at 298. However, the question of disbarment, and the Respondent's continued ability to practice law, are issues which currently remain unanswered. In light of the Board's current position to preserve disbarment as an available form of discipline in the sanction phase,[19] we cannot find that the judicial disciplinary proceeding is moot at the present time.

We hold these proceedings are not moot for the additional reason that, although Respondent's service has already been terminated, he currently seeks collateral attacks on both the criminal sentence and his impeachment. The underlying theory behind Respondent's argument in this regard is the notion that because he has been removed by other processes, he is no longer subject to disciplinary action. As eloquently argued by his attorney, William C. Costopoulos, Esq., on May 27, 1998:

> But let's assume that this Court wants to set the precedent that no matter how a jurist is removed, even if he's dead, that we want to bring the coffin up from the ground. And that's exactly what we're doing in this case, and we're opening it and firing shots into the corpse . . . .

We are guided by the decision of the Supreme Court of Texas in *Matter of Carrillo,* 542 S.W.2d 105 (1976), in which the court was faced with a case in which a lower court judge had been convicted in a trial of impeachment and removed by the state Senate. The judge sought to dismiss the disciplinary proceedings as moot. The Texas Supreme Court, however, noted that in view of a pending lawsuit challenging the validity of the impeachment and removal by the legislature, the case was not moot.

Here, the Respondent has stated he intends to file a collateral attack upon his criminal conviction, and resulting removal from office, through a post-conviction petition. He has also instituted a federal action challenging the validity of his impeachment contending, inter alia, that he was deprived of constitutional due process rights during the Senate proceedings. Without regard to the merits of these actions, they stand as an attack upon the validity of his removal from office. As long as they are pending, the proceeding before this Court is not moot. Indeed, the Respondent has not surrendered any of his positions, but instead is very much alive and litigating. At this time, it is best to recall the words of our Supreme Court:

> What we seek to do is to maintain the integrity of the office of judge to the end that that office, and through it the administration of justice, will deserve and receive the support not only of litigants and lawyers but of the public as well.

*Anonymous Attorneys, supra* at 93, 595 A.2d at 47.

Based upon the reasons stated herein, we find that this case must continue.

### ORDER

PER CURIAM.

AND NOW, this 4th day of August, 1998, it is hereby ORDERED and DIRECTED that the Respondent's Amended Omnibus Pretrial Motion is DENIED AND DISMISSED. Within twenty (20) days of the date of this Order, the Respondent may file an Answer to the Complaint in accordance with C.J.D.R.P. No. 413. ·

BYER, J., files an opinion concurring in the result.

McEWEN, President Judge, and WEINBERG, J., did not participate in the consideration or disposition of this case.

BYER, Judge, concurring.

Although I have some doubt concerning the issue discussed in part II of this opinion, I concur in the result.

### I.

I cannot join the majority opinion to the extent it holds that the mootness doctrine "is applicable to the imposition of sanctions only." Majority opinion at 46. By reasoning

---

19. All forms of discipline under Article V, § 18(d)(1), including disbarment, are available to the Court regardless of whether requested by the Board.

from that incorrect premise, the majority erroneously concludes that this case would not be moot even if the Board elects not to seek a sanction limiting Respondent's ability to practice law.

### A.

Where, because of changed circumstances, a judicial remedy no longer will affect the status of the parties, the case must be dismissed as moot. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Commonwealth, Dept. of Environmental Resources v. Jubelirer,* 531 Pa. 472, 614 A.2d 204 (1992); *Easton Theatres, Inc. v. Wells Fargo Land & Mortgage Co.,* 498 Pa. 557, 449 A.2d 1372 (1982); *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985); *Goldsborough v. Commonwealth, Dept. of Education,* 137 Pa.Commw. 466, 586 A.2d 997 (1991).

In each of the above cases, I suppose one could have argued that the court could have decided the liability issue, because only the remedy was moot. However, such an argument would be contrary to precedent. Unlike the majority here, courts do not look at mootness in such a narrow fashion, for an obvious reason. Where a remedy cannot affect the status of the parties, any decision on liability would be advisory. A function of the mootness doctrine is to prevent courts from rendering prohibited advisory decisions. *See Jubelirer; Jefferson Bank v. Newton Associates,* 454 Pa.Super. 654, 686 A.2d 834 (1996); *see also Erie Insurance Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348 (1996).

After the Board filed its Complaint in this Court, the Senate convicted Respondent on an article of impeachment, removed Respondent from judicial office and disqualified Respondent from holding any public office, judicial or otherwise, in the future.[1] If we were to convict Respondent on the charges before us, we could not remove him from judicial office or disqualify him from holding future judicial office, because the Senate already has conclusively done so. Furthermore, we

do not have the power to enter a judgment contradicting the judgment of the Senate. Therefore, in the absence of the Board's seeking a remedy restricting Respondent's ability to practice law, any decision we would render on the current charges would be a prohibited advisory opinion.

### B.

I would hold that in the absence of a potential remedy affecting the right to practice law—*e.g.* where the Board does not seek such a remedy, or the judicial officer is a district justice not licensed to practice law—the Senate's removal and disqualification of a judicial officer renders disciplinary proceedings before this court moot.

Because Respondent has been removed from office and disqualified from holding not only judicial office but also any other public office in the future, the Supreme Court's decisions in *Matter of Glancey,* 518 Pa. 276, 542 A.2d 1350 (1988), and *Judicial Inquiry and Review Board v. Snyder,* 514 Pa. 142, 523 A.2d 294 (1987), are distinguishable and do not support the majority's conclusion. Analysis of those cases demonstrates that the removal of a judicial officer from office does not render disciplinary proceedings moot only where, unlike here, there still is an issue with respect to that officer's qualification to hold office in the future.

In *Snyder,* the judicial officer lost a retention election, and was thereby removed from office by the electorate while disciplinary charges were pending. In *Glancey,* the judicial officer sought to conclude disciplinary proceedings before the Supreme Court by resigning his office and consenting to the entry of an order declaring him ineligible to hold judicial office in the future. In both cases the Supreme Court concluded that the matters were not moot. In *Snyder,* the Supreme Court noted that although Judge Snyder was no longer a judicial officer, the Court still had the duty to consider whether to impose on former Judge Snyder a permanent bar to holding judicial office. In *Glancey,*

---

1. The Court of Common Pleas also ordered Respondent removed from office as part of the judgment of sentence in the criminal case.

the court quoted its decision in *Snyder*, noting that one of the purposes of the judicial discipline system is to maintain the integrity of the judicial system in order to ensure public confidence in the law. The court further discussed its role as follows:

> Art. V, § 18(*l*) is clear in its mandate that where the appropriate sanction for the errant behavior of a judicial officer justifies the imposition of the censure of removal, it carries with it a permanent bar against future judicial service. This is a clear mandate of the people that ineligibility for future service must be part of the sanction imposed. Thus, the mere termination of the present term of office does not comply with the constitutionally mandated punishment if the established conduct requires the imposition of the sanction of removal. Moreover, the binding effect of a gratuitous promise by a respondent not to seek or hold judicial office in this Commonwealth in the future is at best questionable.

*Glancey*, 518 Pa. at 284, 542 A.2d at 1353–54.

Here, unlike *Snyder*, the Senate's determination conclusively resolves the question of the Respondent's eligibility for future office. We are powerless to hold otherwise. The Senate's conclusive judgment of disqualification cannot be diminished by comparing it with the "gratuitous promise" which the court called "questionable" in *Glancey*. Therefore, *Glancey* and *Snyder* do not save this case from mootness.[2]

## C.

I also disagree with the majority's conclusion that this case cannot be dismissed as moot because of the hypothetical possibility that Respondent might succeed in both his pending collateral attacks on the Senate's proceedings and his criminal conviction.

There is no authority supporting the proposition that a pending collateral attack will save a case from mootness. The only authority which the majority cites in support of this novel proposition is a thoroughly unconvincing Texas opinion, which fails to analyze the question.

Both the United States Supreme Court and the Pennsylvania Supreme Court have held that hypothetical possibilities do not create an exception to the mootness doctrine. *See DeFunis; Jubelirer.* If Respondent were to succeed in both his pending collateral attacks after this Court dismissed this case as moot, there is nothing which would prevent the Board from reinstituting charges, because there is no limitation of actions provision applicable to proceedings before this Court.

## II.

This case should be dismissed as moot if it were not for the Supreme Court's opinion in *Disciplinary Counsel v. Anonymous Attorney A*, 528 Pa. 83, 595 A.2d 42 (1991). Although I do not share the strength of the majority's conviction that *Anonymous Attorney A* survives the 1993 amendment to the Pennsylvania Constitution which established this Court and revised the judicial discipline system in our Commonwealth, I concur in the majority's result.

Pennsylvania Constitution, Article V, Section 18(d)(3), by providing that a judicial officer who is "disbarred as a member of the bar of the Supreme Court" shall be removed, by this Court, from office seems to anticipate that the disbarment would occur in some other proceeding, before another tribunal. However, as the majority correctly notes, a similar provision existed in the Pennsylvania Constitution before the 1993 amendment and

---

**2.** Article V, § 18(d)(5) of the Pennsylvania Constitution does not support the majority's conclusion. By providing that the judicial disciplinary provisions are "in addition to and not in substitution for" the General Assembly's impeachment power, the Constitution does not provide the Court of Judicial Discipline with the power to proceed, in the absence of a case or controversy, with the needless act of removing and disqualifying a judicial officer whom the Senate already has removed and disqualified; nor does it authorize this Court to reach an independent determination which might be inconsistent with the Senate's convicting a judicial officer on articles of impeachment. Instead, this provision makes clear that the adoption of specific judicial disciplinary proceedings in Art. V, § 18 does not supplant the Legislative Branch's general power of impeachment over all public officers, including judicial officers.

at the time *Anonymous Attorney A* was decided.

A question in my mind is whether *Anonymous Attorney A* might have been incorrectly decided in view of the provision now found in Pennsylvania Constitution, Article V, Section 18(d)(3). Of course, when the Supreme Court decided *Anonymous Attorney A,* resolution of that question really did not matter. Under the discipline scheme then in effect, the Supreme Court was not bound by recommendations of the former Judicial Inquiry and Review Board, but would review them de novo, the same standard applicable to the Supreme Court's review of lawyer disciplinary decisions by the Disciplinary Board. Thus, all *Anonymous Attorney A* did was to shift the initial recommendation responsibility from one agency of the Supreme Court to another agency of the Supreme Court, with the Supreme Court making the ultimate disciplinary decision.

It might be possible to harmonize the holding of *Anonymous Attorney A* with Pennsylvania Constitution Article V, Section 18(d)(3). If the holding of *Anonymous Attorney A* were limited to situations where the disciplinary sanction affecting the right to practice law is based upon conduct which occurred while the judicial officer was holding judicial office, then a complaint that a judicial officer violated the Rules of Professional Conduct before assuming judicial office would be prosecuted before the Disciplinary Board in the first instance, with the final decision to be made by the Supreme Court; and in case of disbarment for such conduct, Pennsylvania Constitution Article V, Section 18(d)(3) would require that this Court remove the offender from judicial office.

The problem is that the opinion in *Anonymous Attorney A,* by relying upon *In Re Greenberg,* 442 Pa. 411, 280 A.2d 370 (1971), and in *dicta,* appears to conclude that JIRB and not the Disciplinary Board had jurisdiction over complaints that a judicial officer had violated the Rules of Professional Conduct before assuming judicial office. Such a conclusion not only is *dicta,* because the conduct involved in *Anonymous Attorney A* occurred while the respondents were acting as judicial officers, but also is troubling because

it would reduce to surplusage the phrase "disbarred as a member of the bar of the Supreme Court" in Pennsylvania Constitution Article V, Section 18(d)(3).

I also am troubled by trying to harmonize the continued precedential authority of *Anonymous Attorney A* in light of other changes made by the 1993 amendments to the Pennsylvania Constitution. As noted above, when the Supreme Court decided *Anonymous Attorney A,* the decision of whether to vest jurisdiction in the former Judicial Inquiry and Review Board or in the Disciplinary Board made no difference, because the Supreme Court made the ultimate decision. However, under the 1993 amendment to Pennsylvania Constitution, Article V, Section 18(c)(2), the Supreme Court has a limited standard of review over decisions of this Court, pursuant to which the Supreme Court is limited to a clearly erroneous standard in reviewing our findings of fact and has no power to review our sanctions except to determine whether they are lawful.

I am concerned that the result of applying the jurisdictional holding of *Anonymous Attorney A* to this Court creates inconsistencies in the Supreme Court's ability to exercise its exclusive power to regulate the practice of law under Pennsylvania Constitution Article V, § 10, and its imposition of disciplinary sanctions pursuant to that power, depending upon whether the offender was holding judicial office.

I also am bothered by two additional aspects of the problem. First, if this Court has the power to disbar or suspend a judicial officer with respect to his or her right to practice law, do we also have jurisdiction over applications for reinstatement? *See* Pa. R.D.E. 218. Second, the effect of our decision is to expand not only our jurisdiction but also that of the Judicial Conduct Board, permitting that Board to delve into policy issues involving regulation of the practice of law.

On the other hand, the majority's decision to follow *Anonymous Attorney A* notwithstanding the 1993 Constitutional amendment promotes both efficiency and fairness to judicial officers. It makes better sense for judicial officers who are members of the bar

and who are charged with violations of both the Code of Judicial Conduct and the Rules of Professional Conduct to face only a single proceeding before this Court and to have all sanctions imposed at once, instead of proceedings both before this Court and the Disciplinary Board, with separate appellate review in the Supreme Court subject to different standards. Such a scheme also avoids the possibility of excessive punishment, because this Court, taking into consideration all the circumstances, could make the determination whether judicial disciplinary sanctions standing alone would be sufficient to vindicate the public interest, while there might be a greater temptation to impose multiple sanctions if the case were heard in the Disciplinary Board as well.

Nevertheless, difficult questions remain, including:

1. Which tribunal has jurisdiction over applications for reinstatement;

2. Does this Court have jurisdiction over claims that a judicial officer violated the Rules of Professional Conduct in his or her law practice before assuming judicial office;

3. Which tribunal has jurisdiction over lawyer disciplinary cases against district justices, where the discipline is sought based upon conduct which was unrelated to the respondent's judicial duties but instead related to his or her separate practice of law; and

4. What is the standard of review on appeal from a sanction which affects a judicial officer's right to practice law when that sanction is imposed by this Court?

The Supreme Court has the power to resolve these questions pursuant to its rule making authority. The Supreme Court also could use its rule making authority to confirm that this Court does have jurisdiction to enter a sanction affecting a judicial officer's ability to practice law as a sanction for judicial misconduct, assuming that the Supreme Court intends that its holding in *Anonymous*

*Attorney A* survive the 1993 Constitutional amendments. I urge that the Court resolve these issues by appropriate rules quickly.

### III.

We are deciding these issues in a context which is somewhat hypothetical. Respondent has not indicated any intent to resume the practice of law. However, short of a formal resignation from the Bar of the Supreme Court under Pa.R.D.E. 215, an expression by Respondent that he does not intend to resume the practice of law in Pennsylvania probably would be insufficient to require dismissal of this case as moot, because, under *Glancey,* such an expression would be a "gratuitous promise."

More to the point, the Board has not formally decided whether, in fact, it will request this Court to impose a sanction restricting Respondent's ability to practice law. At the May 27, 1998 oral argument on Respondent's Omnibus Motion, counsel for the Board stated that the Board had not yet taken a position on this question.

Fairness and judicial efficiency dictate that the Board make a decision now with respect to whether it intends to seek to limit Respondent's right to practice law. If the Board has no intention of seeking such a further sanction on Respondent, then in fairness the Board should advise both this Court and Respondent, and we should then dismiss this action as moot.

This case is yet another chapter in the saddest volume of the otherwise distinguished history of the Pennsylvania judiciary. It is time to close the book.