**IN RE: Michael J. SULLIVAN Judge,
Philadelphia Traffic Court,
Philadelphia County**

No. 2 JD 13

No. 5 JD 14

No. 9 JD 15

Court of Judicial Discipline
of Pennsylvania.

Filed: August 27, 2015

BEFORE: Honorable Robert J. Colville, P.J., Honorable Carmella Mullen, Honorable Jack A. Panella, Honorable John J. Soroko, Honorable David J. Shrager, Honorable David J. Barton, JJ.

## OPINION BY JUDGE JACK PANELLA

### INTRODUCTION

On August 9, 2013, this Court entered a decision and order which suspended the Respondent, the Honorable Michael J. Sullivan, without pay, pending further order of court. Judge Sullivan has now filed a motion to clarify prior orders, which is basically a request for this Court to vacate its prior order and direct the Commonwealth to pay the Respondent back-pay.

### PROCEDURAL HISTORY

The first involvement of the Court of Judicial Discipline was on January 31, 2013, when the Judicial Conduct Board filed a "Petition for Interim Suspension Without Pay" due to Sullivan having been indicted in federal court on felony charges, including wire fraud, 18 U.S.C. §§ 1343, and mail fraud, 18 U.S.C. §§ 1341.[1] This Petition was docketed to No. 2 JD 2013. As aforesaid, this Court entered the suspension without pay on August 9, 2013.[2]

On July 23, 2014, Sullivan was found not guilty of all charges in federal court.

Sullivan's first attempt to lift the suspension in this Court was a petition for relief filed on September 8, 2014. The basis of that petition was that the Board's earlier petition had been premised solely on the federal Indictment. Sullivan ar-

---

Hon. Robert A. Graci, Chief Counsel, James P. Kleman, Jr., Deputy Counsel, Judicial Conduct Board, Samuel C. Stretton, Esquire, West Chester, PA, Counsel for Respondent.

1. The Board filed an Amended Petition on June 5, 2013, which corrected the actual counts filed against Sullivan in the federal indictment.

2. The Pennsylvania Supreme Court had suspended the Respondent on February 1, 2013, docketed to 398 Judicial Administration Docket.

gued that because he had been found not guilty, the acquittal "eliminate[ed] the entire basis for the interim suspension of the Petitioner." Petition for Relief, 9–8–14 at ¶ 6. Sullivan requested that the suspension be rescinded and that he "be awarded the statutory salary of which he was deprived during said interim suspension." On September 17, 2014, the Judicial Conduct Board filed its answer to the petition, in which the Board "admitted that the Board's petition was based solely on the Indictment." Answer to Petition for Relief at ¶ 4. Furthermore, the Board "respectfully request[ed] that this Honorable Court grant Petitioner's request to vacate this Court's Order of Suspension."

At about the same time, Sullivan filed an "Application for Relief" in the Pennsylvania Supreme Court, requesting that the Supreme Court vacate its order of suspension with respect to back-pay, and restore his current pay. The Pennsylvania Supreme Court, in an Order dated November 18, 2014, vacated its order of February 1, 2013. The Supreme Court stated that its action recognized Sullivan's acquittal of all charges in federal court. The Supreme Court further stated:

> As acknowledged by Petitioner, the Court of Judicial Discipline ("CJD") entered a separate order suspending Petitioner without pay. The present order should not be construed as bearing in any way upon the propriety or longevity of the CJD's order or upon any further proceedings or action which may be appropriate within the scheme of judicial discipline prescribed in Article V, Section 18 of the Pennsylvania Constitution. *See, In re Bruno,* —— Pa. ——, 101 A.3d 635, 686 (2014) ("[t]he constitutional powers of the Supreme Court and the [Court of Judicial Discipline], and the legal predicates for their respective actions, are distinct and may comfortably operate separately").

Following the docketing of the Supreme Court's order of November 18, 2014, this Court, recognizing that the only pleading before the CJD by the Board was the Petition for Interim Suspension filed in 2013, issued an order on December 8, 2014 as follows:

> AND NOW, this 8th day of December, 2014, in the absence of the filing of a complaint or Petition for Relief by the Judicial Conduct Board, this case will be dismissed in fourteen (14) days on the basis that this Court lacks jurisdiction.

Although it was slightly beyond the fourteen days as specified in the December 8th Order, the Board did file a Complaint against Judge Sullivan, docketed to No. 5 JD 2014, on December 22, 2014. This Complaint alleged, *inter alia,* that Sullivan had participated in the practice of "giving favorable treatment in traffic court cases" to certain defendants during his tenure as a judge on the Philadelphia Traffic Court and, importantly, after he became Administrative Judge. The Complaint included allegations that favorable treatment was extended to defendants who were somehow connected or related to judges of the Traffic Court. The favorable treatment alleged included finding the above referenced individuals "not guilty *in absentia.*"

The Complaint concluded that Judge Sullivan is subject to discipline pursuant to Article V, §§ 17(b) & 18(d)(1) of the Pennsylvania Constitution.

Additionally, the Board filed a new petition for interim suspension. Although Sullivan agreed to an interim suspension order, he contested the provision that it be without pay.

On April 14, 2015, the Board filed a second complaint against Judge Sullivan, docketed to No. 9 JD 2015, alleging that although Sullivan was found "not guilty" of

violating federal criminal statutes, his conduct as alleged in the federal prosecution constituted violations of ·the Pennsylvania Constitution and the Rules Governing Standards of Conduct of Magisterial District Judges applicable to Philadelphia Traffic Court judges. Numerous fact-specific cases were cited in the new Complaint, including the matters involving Michael Ambron and David Callsen, Jr., as well as former senior Magisterial District Judge Kenneth Miller which implicated Sullivan in a system of special treatment for certain defendants. The Complaint again concluded that Sullivan is subject to discipline pursuant to Article V,· §§ 17(b) & 18(d)(1) of the Pennsylvania Constitution.

In order to again get the issue of back-pay In front of this Court, Sullivan filed, on March 20, 2015, a "Motion To Clarify Prior Orders So Judge Sullivan Can Receive His Back Pay." In this motion, Sullivan argued that the new complaint and petition docketed to 5 JD 2014 on December 22, 2014 were not related to the justification for the prior suspension ordered in 2013. Sullivan further contended that his accumulated past· pay is due because he was acquitted in federal court. Therefore, he· requested that he be reimbursed "for all his back pay . . . until the present." Motion To Clarify Prior Orders at ¶ 9.[3]

In our Order of June 25, 2015, which set up the Pre–Trial Conference, we denied the Motion to Clarify Prior Orders, without prejudice to be raised at the conclusion of the trial on the merits. Sullivan has requested that we reconsider this decision. We heard argument from counsel for Sulli-

van and the Board on August 13, 2015 at the time of the Pretrial Conference.

## DISCUSSION

Counsel for Sullivan makes a compelling argument that Sullivan is entitled to reinstatement of pay dating back to February 1, 2013. There is no question that the petitions for suspension filed in 2013 relied solely on the federal indictment, of which Sullivan was found not guilty. The Board, in both its Answer to Sullivan's petition and at the argument heard on August 13, 2015, did not object to the reimbursement of back-pay up to December 22, 2014, the date the new petition for suspension was filed.

In light of the magnitude of the charges herein, and the clear picture presented by the Board that there was a broad scale pattern of case fixing in traffic court, we must look beyond the effect of this prosecution on the individual judicial officer and consider the damage done to the integrity of the Pennsylvania judiciary.[4]

We first examine the Complaints that are currently before the Court. In the Complaint filed to 5 JD 2014, the Board alleges that Sullivan routinely participated in a practice of granting "special consideration", in other words favorable treatment, to certain defendants in the Philadelphia Traffic Court by way of *ex parte* requests. It was specifically alleged that Sullivan participated in this practice from the time he first became a traffic court judge in 2006 and, significantly, during the period he served as Administrative Judge from April through December 2011. It is al-

---

**3.** At a conference held on August 13, 2015, counsel for Sullivan appropriately conceded that the Court would have jurisdiction to suspend Sullivan *as of December 22, 2014,* the date the new Complaint and Petition for Suspension were filed. Therefore, Sullivan ar-

gued that back-pay should be paid at least up to December 22, 2014.

**4.** We note that the charges against Judge Sullivan do not include any allegation that he received any compensation or bribe in return for the special treatment.

leged that his participation in this practice even continued during his tenure as a traffic court judge after he had been removed by the Pennsylvania Supreme Court as Administrative Judge in December 2011. The individuals who received this "special consideration" included those defendants who were:

- politically connected;
- family members of the traffic court judges;
- personal friends of the traffic court judges; and
- court employees and family members of court employees;

In the Complaint filed to No. 9 JD 2015, a number of specific instances of unethical conduct are alleged.

**Abron/Brightline:** The Board alleges that in 2011, Sullivan had *ex parte* conversations which resulted in him finding two defendants not guilty;

**Callsen:** The Board alleges that in 2009, Sullivan presided over the case, and did not recuse, although he had a relationship to the defendant; in fact, Callsen worked for Sullivan's family business. It was further alleged that Sullivan did not disclose to the Commonwealth this information;

**Senior MDJ Miller:** The Board alleges that Sullivan sent a list of cases for which Senior MDJ Kenneth

Miller was to grant special favorable treatment. Although there is no date specified for this incident, it presumably occurred before Sullivan's suspension in 2013.

\* \* \* \*

Sullivan's acquittal in the federal prosecution did not end the disciplinary action filed against him. The fact that Sullivan was indicted in federal court, and was acquitted of those charges before a jury in which the standard of proof was beyond a reasonable doubt, did not change the Court of Judicial Discipline's jurisdiction to act on a complaint alleging judicial misconduct. *In re Larsen,* 571 Pa. 457, 471–472, 812 A.2d 640, 649 (Pa. Spec.Trib.2002). The Pennsylvania Constitution confers jurisdiction and power to investigate, adjudicate, and punish wrongdoing by judicial officers of this Commonwealth to the Judicial Conduct Board and the Court of Judicial Discipline in Article V, Section 18. The amendments to Article V, Section 18 confer specific jurisdiction over such matters on the Board and the Court of Judicial Discipline.[5] *Id.*

Judicial conduct proceedings are considered quasi-criminal in nature, and, therefore, the defendant is afforded the same constitutional rights as are criminal defendants. *In re Merlo,* 619 Pa. 1, 14, 58 A.3d 1, 8 (2012). However, at trial before the Court of Judicial Discipline, the Board must prove the charges by *clear and convincing evidence.*[6] *Id.* In light of the dif-

5. Our jurisprudence on the principle that ethical discipline is distinct from criminal prosecution has been uniform for as far back as research is available; In *In re Barach,* 279 Pa. 89, 123 A. 727 (1924), a case involving attorney discipline, an attorney was acquitted in a criminal prosecution, coincidentally in federal court, however, that did not prevent

his disbarment on the same charge. The Pennsylvania Supreme Court, albeit in a case involving lawyer discipline, held that the finding of the jury was not res judicata on the issue of ethical charges.

6. "The CJD has original jurisdiction over actions alleging judicial wrongdoing prosecuted by the Board. *See* Pa. Const. art. V,

ferent forums and distinct standards of proof involved, the criminal process and the judicial discipline system act independently of each other. Therefore, we are not bound to treat Sullivan in a specific manner because of his acquittal in federal court.

■ There is no question, as aforesaid, that the initial petitions for suspension filed against Sullivan in our Court, and our Order for suspension, were based solely on the federal indictment. It was not until December 2014 that the Board made allegations based on severable factual scenarios. Therefore, it would appear that the legal justification for the suspension ended when Sullivan was found not guilty. Nonetheless, we find that our responsibility to maintain public confidence in the Pennsylvania judiciary far outweighs the procedural quagmire presented herein.

As outlined above, all of the factual allegations underlying the current ethical charges filed against Sullivan predate the original petition for interim suspension. These factual allegations, in major respects, actually parallel the facts which supported the prior federal charges which justified the original suspension. In light of the substantial allegations of corrupt conduct while Sullivan was sitting, this Court finds sufficient grounds to maintain the suspension without pay. If we were to grant his request, and give him back-pay before the trial on the merits, there would be the possibility that Sullivan would be paid, from tax-payer funded accounts, for a period when he had been suspended, and did not work as a judge, and the grounds for the charges which led to the initial suspension are later found to be credible.[7] This alleged conduct, if found by the Court of Judicial Discipline to be proven by clear and convincing evidence, could lead to Sullivan's removal as a judge.

■ Additionally, and most importantly, we find that a denial of Sullivan's motion is necessary to preserve the integrity of the Pennsylvania judiciary. Utilizing the words of our Supreme Court, Sullivan's argument "presupposes that the only purpose of the Court of Judicial Discipline is to punish the miscreant judicial officer." In re Melograne, 571 Pa. 490, 496, 812 A.2d 1164, 1168 (2002). It is an appropriate time in our Commonwealth to renew the constitutional mandate of the Pennsylvania Court of Judicial Discipline:

> The Court of Judicial Discipline exists not only to chasten the misbehaving judge; rather, it serves an equally—if not more—important function as protector of the integrity of the judiciary and the public's confidence in that branch of government. In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct.

Id., 571 Pa. at 496–497, 812 A.2d at 1168. "In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct." In re Berkhimer, 593 Pa. 366, 375, 930 A.2d 1255, 1259–1260 (2007) (emphasis added).

§ 18(b)(5). The Supreme Court has exclusive jurisdiction over appeals from the CJD. 42 Pa.C.S. § 725(2); see Pa. Const. art. V, § 18(c)(1)." In re Bruno, —— Pa. ——, 101 A.3d 635, 662 (2014).

7. At the pretrial conference held on August 13, 2015, Sullivan stipulated to the underlying facts in the charges regarding Abron/Brightline, Callsen and Senior MDJ Miller from the Complaint filed in No. 9 JD 2015.

Appellate courts around our country have repeatedly held that the purpose of discipline in judicial cases is not to punish the judge, but rather to preserve the integrity of the judicial system and public confidence in the system. See, Cynthia Gray, A Study of State Judicial Discipline Sanctions 1, 3 (National Center for State Courts 2002).

Our action herein is necessitated because these charges go to the very core of the adjudicative process whereby we must assure our citizens that everyone is treated the same in court and that there is no special class of litigants. Therefore, we must deny Sullivan's motion at this time.

## ORDER

AND NOW, this 27th day of August, 2015, it is ORDERED that Motion to Clarify Prior Orders is DENIED and DISMISSED.

Judge Mullen dissents from this Opinion and Order.